## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MARTIN ROY ROMERO,                 )
                                   )
            Petitioner,            )
                                   )
v.                                 )         No. CIV-05-1142-HE
                                   )
ERIC FRANKLIN, Warden,             )
                                   )
            Respondent.            )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C.

§ 2254, seeking a writ of habeas corpus.  The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Respondent has filed a response to the petition [Doc. No. 11] and the state court trial

transcripts ("Tr.").  Petitioner has filed a reply to the response [Doc. No. 15], and thus, the

matter is at issue.  For the reasons set forth below, it is recommended that the petition be

denied.

Background

Following a controlled drug buy monitored by a multiple law enforcement agencies

on December 22, 1999, *see* Tr. 96, Petitioner was charged with conspiracy to traffic in

methamphetamine (Count One); trafficking in methamphetamine (Count Two); and using

a minor to distribute methamphetamine (Count Three) in the District Court of Stephens

County, Case No. CF-1999-427.[1]   After a jury trial on January 26 and 27, 2004,[2] Petitioner was convicted on all three counts.   The trial court followed the jury's sentencing recommendation and sentenced Petitioner to ten years imprisonment and a fine of $50,000.00 on Count One; fifteen years imprisonment and a fine of $100,000.00 on Count Two; and twenty years of imprisonment and a fine of $250,000.00 on Count Three, and the court ordered the sentences to be served consecutively.   Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA), alleging (1) prosecutorial misconduct deprived him of a fair trial; (2) his convictions for both conspiracy to traffic methamphetamine and trafficking methamphetamine violated his constitutional and statutory protections against double punishment and double jeopardy; (3) there was insufficient evidence to support his conviction of conspiracy; and (4) his convictions for trafficking and using a minor in trafficking arose from a single sale of methamphetamine and therefore violated the prohibition against double jeopardy and double punishment. Response, Ex. A.   The OCCA found that Petitioner's conviction for trafficking in methamphetamine violated of Okla. Stat. tit. 21, § 11 (Supp. 1999) as double punishment. Response, Ex. C at 3-4.   The Court therefore reversed and remanded the conviction and sentence in Count Two with instructions to dismiss.   *Id.* The Court affirmed Petitioner's remaining convictions and sentences.   *Id.* at 5.   Petitioner states that at the time of filing

---

[1]Petitioner was also charged with conspiracy to use a minor to traffic methamphetamine (Count Four) but after the State presented its case, the trial court dismissed Count Four for insufficient evidence. Tr. at 59, 152.

[2]Petitioner escaped after the December 22, 1999, drug transaction and was returned to Oklahoma from Texas by law enforcement authorities on September 26, 2003.   Tr. at 117.   On April 20, 2004, Petitioner was also convicted of five counts of distribution of methamphetamine that took place in Stephens County on December 3, 4, 6, 10, and 21, 1999.   Case No. CF-1999-428, District Court of Stephens County. Petitioner is challenging his convictions in Case No. CF-1999-428 in another pending habeas action in this Court.   *Aurelio Roy Romero v. Franklin*, Case No. CIV-05-1207-HE.

his federal habeas petition, he had filed no applications for post-conviction relief.  Petition at 2.[3]

Petitioner now seeks federal habeas relief, raising the same four claims he presented on direct appeal.  Petition at 5-10.  Respondent states that Petitioner has exhausted his state court remedies through his direct appeal and that the petition is timely.  Respondent contends that the OCCA's decision as to Petitioner's claims of prosecutorial misconduct and insufficient evidence is not contrary to or an unreasonable application of Supreme Court law.  Respondent further contends that Petitioner's claims of double jeopardy and double punishment in Grounds Two and Four should be dismissed as moot because the OCCA granted relief and reversed Petitioner's conviction in Count Two for trafficking in methamphetamine.

Discussion

I.  <u>Moot Claims - Grounds Two and Four</u>

In Ground Two Petitioner alleges, as he did on direct appeal, that "[u]nder the facts of the case, Appellant's convictions for both conspiracy to traffic methamphetamine and trafficking methamphetamine violated his const[itutional] and statutory protections against double punishment and double jeopardy."  Petition at 6.  In Ground Four Petitioner claims, as on direct appeal, that his "right to be free from double jeopardy and double punishment was violated when he was convicted of both trafficking and using a minor in trafficking,

---

[3]Although Petitioner indicated that he has filed no post-conviction applications, he added a notation "not at this time, however will file a PCR soon . . . in a lower court."  Petition at 2.  Although in his reply to the response, Petitioner again indicates that he "will be" filing a state post-conviction action at which time he will request permission to file an amended petition, he has not sought leave to do so.

where both convictions arose from a single alleged sale of methamphetamine." Petition at 10.

Respondent contends that the claims raised in Grounds Two and Four of the petition should be dismissed as moot because both claims are contingent upon the existence of a conviction for trafficking in methamphetamine  Respondent argues that because the OCCA reversed Petitioner's conviction for trafficking on direct appeal and remanded with instructions to dismiss, there remains no basis for habeas relief with respect to the claims raised in Grounds Two and Four.  Response at 10-11 (citing *North Caroline v. Rice*, 404 U.S. 244, 246 (1971)).  The undersigned agrees.

"A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." *Aragon v. Shanks*, 144 F.3d 690, 691 (10th Cir. 1998). The requirement that a petition present a "case or controversy" means that Petitioner  must have suffered an actual injury which can "'be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citation omitted).

On direct appeal, the OCCA held that Petitioner's convictions for conspiracy to traffic methamphetamine and trafficking methamphetamine did not constitute double jeopardy or double punishment. Response, Ex. C at 3 (citing *Littlejohn v. State*, 989 P.2d 901 (Okla. Crim. App. 1998) for proposition that "conspiracy to commit an unlawful act constitutes an independent crime complete in itself and distinct from the unlawful act"). However, the Court found that Petitioner's convictions for trafficking in methamphetamine (Count Two) and for using a minor to traffic methamphetamine (Count Three) violated Oklahoma's statutory prohibition against double punishment.  *Id.* at 3-4 (citing Okla. Stat. tit. 21, § 11).  The Court therefore reversed with instructions to dismiss Petitioner's

conviction of trafficking. Because Petitioner's conviction for trafficking no longer exists, there is nothing more which can be addressed by a favorable decision herein with respect to Petitioner's claims of double jeopardy in Grounds Two and Four. Accordingly, the undersigned recommends that the claims raised in Grounds Two and Four be dismissed as moot.[4]

II.  Standard Governing Petitions For Habeas Corpus

For the remaining claims that have been adjudicated by the OCCA, this Court may grant a writ of habeas corpus relief only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's decision is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 125 S.Ct. 1432, 1439 (2005); *Williams v. Taylor*, 529 U.S. at 407. Further, a state prisoner seeking habeas relief based

---

[4]Petitioner indicates in his reply that he agrees that the claims raised in Grounds Two and Four are now moot; he states that he included these two claims "to help support all the rest of the propositions." Petitioner's Reply at 7.

on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

III.  Prosecutorial Misconduct- Ground One

In Ground One Petitioner alleges that the prosecutor "us[ed] language throughout [his] trial that was done to play upon societal alarm." Petition at 5. Petitioner also indicates that he was prejudiced because the prosecutor's "speaking so as to have the jury hear." *Id.*

In this habeas corpus action, Petitioner's allegations of prosecutorial misconduct, which do not implicate a specific constitutional right, are reviewed only for a violation of due process. *See Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005) (citing *Darden v. Wainwright*, 477 U.S. 168 (1986)). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Patton*, 425 F.3d at 811 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). To be entitled to habeas relief, a petitioner must establish that the prosecution's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Patton*, 425 F.3d at 811 (citing *Donnelly*, 416 U.S. at 643). Such a determination may be made only after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's case." *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986). Petitioner must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to the make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643; *Patton*, 425 F.3d at 811.

6

Although Petitioner does not cite to specific portions of the trial transcript to support his claim of prosecutorial misconduct, he asserts in his petition that he exhausted his claim of prosecutorial misconduct on direct appeal. Thus, it is assumed that Petitioner is relying on the same facts to support his claim of prosecutorial misconduct as he relied upon in his direct appeal. In that appeal, Petitioner first claimed that the prosecutor improperly appealed to societal alarm when he inquired of Investigator Carey Rouse about the amount of drugs purchased from Petitioner as compared to the population of the county in which the crime occurred. Response, Ex. A at 4-5. The trial record shows that Investigator Rouse, a member of the District Six Drug Task Force, had explained that a large number of law enforcement officers were involved in monitoring the controlled drug buy because the buy was anticipated to be approximately one pound of methamphetamine – much larger than usual for the area. Tr. 96. The prosecutor then asked Rouse to put the amount of drugs purchased from Petitioner into perspective for the jury in dosage amounts. Tr. 96. Defense counsel objected as to the relevance of the question, and the trial court overruled the objection. Tr. 97-98. Rouse then testified that the three hundred ninety-eight grams sold by Petitioner was enough to create about seventy thousand dosage units and in comparison, the population of Stephens County was approximately thirty-five thousand people. Tr. 98.

In reviewing Petitioner's claim on direct appeal that the prosecutor's question was an "attempt to play upon societal alarm," Response, Ex. A at 5, the OCCA held that "the evidence comparing the quantity of dosage units of methamphetamine to the population of Stephens County was relevant for the jury's understanding of a trafficking amount of methamphetamine." Response, Ex. C at 2.

7

The Tenth Circuit has held that, "even '[a]n improper appeal to societal alarm typically does not amount to a denial of due process.'" *Duckett v. Mullin*, 306 F.3d 982, 990 (10th Cir. 2002) (quoting *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000)); *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994) (holding "improper appeals to societal alarm" and requests for "vengeance for the community" do not amount to a denial of due process). The undersigned finds that the prosecutor's comments regarding the impact of the amount of drugs sold during the December 22, 1999, drug transaction, did not deprive him of a fair trial. First, the comments cannot be construed as urging the jury to convict Petitioner for reasons wholly irrelevant to his own guilt or innocence. To prove that Petitioner conspired to traffic in methamphetamine the State had to prove that Petitioner entered into an agreement with his co-conspirator to knowingly and intentionally possess at least 20 grams of a mixture or substance containing a detectable amount of methamphetamine. Okla. Stat. tit. 63, § 2-415. The prosecutor's comments regarding the amount of methamphetamine sold by Petitioner were relevant to the offense of conspiracy to traffic in methamphetamine. The jury was instructed that it was their responsibility to consider the evidence and to determine the facts from the evidence which consists of the testimony received from witnesses under oath, stipulations, and exhibits that were admitted into evidence. The jury was further instructed that Petitioner could only be convicted if all of the evidence established beyond a reasonable doubt that he was guilty of the charged offenses. Response, Ex. G (Instruction No. 3). The prosecutor's question was clearly directed toward eliciting evidence of Petitioner's criminal activity upon which the jury could rely to convict Petitioner. Finally, as discussed in more detail in connection with Petitioner's sufficiency of the evidence clam in Ground Three, *infra*,

there was more than substantial evidence, both direct and circumstantial, of Petitioner's guilt presented at trial. Thus, the undersigned finds that Petitioner has failed to show that the prosecutor's remarks so infected his trial with unfairness as to render Petitioner's convictions a denial of due process.  Accordingly, the undersigned finds that Petitioner fails to show that his trial was rendered fundamentally unfair by the above challenged statements.

In his direct appeal brief, Petitioner also challenged comments made by the prosecutor during closing argument, to which no objections were made.  Petitioner claimed in his direct appeal brief that during closing argument the prosecutor continued to arouse societal alarm through the following comments:

> Ladies and Gentlemen, throughout human history there have been various plagues that have caused mankind to suffer.  These plagues are normally what biologists referred to carried by vectors.  Vectors are what are referred to or known in biology as blood-sucking insects.  You know them. Mosquitoes, tickets, lice, fleas.  We're all familiar with those things.
>         But today we have something that is a plague on the streets of Duncan, Oklahoma.  Methamphetamine.  Now, how in the world is methamphetamine spread.  Well, Ladies and Gentlemen, in this case it's spread by a businessman, Martin Romero.

Tr. at 156.   Following these remarks, the prosecutor explained the significance of the seventy thousand dosages of methamphetamine sold by Petitioner as follows:

> Now, let's put that in perspective if you will. Been to Wal-Mart - - did you go to Wal-Mart Christmas.  I mean, think - - well, some of you may have, some of you may have - - drive down this street on a - - 5:00 o'clock.  Drive down 81 at 5:00 o'clock.  Look at all the people.  It's probably irritating to most of us.  I mean - - you know, I mean, there is (sic) just so many people.  Two doses for every man, woman and child that you came into contact with, and guess what, you're nowhere near seventy thousand people and you've got a whole lot left over.  A whole lot left over.  That's the significance of this.

Tr. at 159.  Finally, Petitioner argued on direct appeal that the prosecutor further alarmed by the jury by appealing for sympathy for an alleged participant in the crimes, specifically, by referring to Petitioner's use of "a child to do this plague."  Tr. at 161.

On direct appeal, the OCCA considered these unobjected to alleged instances of prosecutorial misconduct for plain error only and concluded that none warranted relief, finding that the prosecutor's arguments "fell within the wide range of argument." Response, Ex. C at 3.

Here, a review of the trial record shows that none of the prosecutor's comments improperly influenced the jury's decision, rather, the comments were a logical and reasonable inference from the evidence presented at trial.  In any event, the undersigned finds that Petitioner has not shown that the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  In light of the considerable evidence establishing Petitioner's guilt, as discussed below, there is no reasonable probability that the guilt verdict in this case would have been different without the alleged misconduct.  Moreover, the fact that defense counsel did not object to the prosecutor's statements is significant to the fundamental fairness analysis.  *See Walker v. Gibson*, 228 F.3d 1217, 1241 (10th Cir. 2000) ("Counsel's failure to object to many of the comments, while not dispositive, is relevant to a fundamental fairness assessment.") (citation omitted); *Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999) (same).  Under these circumstances, the undersigned finds that none of these instances of alleged prosecutorial misconduct so infected Petitioner's trial with unfairness as to render his conviction a denial of due process.  *Donnelly v. DeChristoforo*, 416 U.S. at 645.  Therefore, the undersigned finds that the OCCA's rejection of Petitioner's claim of prosecutorial misconduct was not contrary to

or an unreasonable application of Supreme Court law.  Accordingly, Petitioner is not entitled to habeas relief on Ground One.

## IV.  Sufficiency of the Evidence - Ground Three

In Ground Three, Petitioner asserts that the circumstantial evidence presented at his trial was insufficient to support his conviction for conspiracy to traffic in methamphetamine.  Petitioner claims he is "actually and factually innocent" of the offense and that "none of the elements were proven [beyond] a reasonable doubt."  Petition at 8. On direct appeal, Petitioner primarily argued that the State failed to prove that Petitioner and his co-conspirator entered into an agreement to traffic in illegal drugs.  Response, Ex. A at 12.

When reviewing the sufficiency of the evidence raised in a habeas corpus petition, the Court inquires "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard reflects the "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004).   Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).  The Court's review under this standard is "'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

resolution.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Wright v. West*, 505 U.S. 277, 296-97 (1992)).[5]

On direct appeal, the OCCA, tracking the language in *Jackson*, held that "there was sufficient evidence, viewed in a light most favorable to the state, for any rational trier of fact to have found that the crime of conspiracy to traffic methamphetamine was committed." Response, Ex. C at 3. The Court specifically found that "[t]here was sufficient evidence to show an agreement between [Petitioner] and Aurelio 'Peco' Romero to traffic methamphetamine, and the overt act toward [the] commission of the crime was the delivery of the buy to Romero, by Peco, at the determined location." The question therefore is whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of *Jackson v. Virginia*.

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. *Jackson*, 443 U.S. at 309, 324 n.16. Under Okla. Stat. tit. 63, § 2-408, "[a]ny person who . . . conspires to commit any offense defined in the Uniform Controlled Dangerous Substances Act, Section 2-101 et seq. of this title shall be subject to the penalty prescribed for the offense, the commission of which was the object of the . . . conspiracy." The provisions of Okla. Stat. tit. 63, § 2-415, makes it unlawful for any person to:

> 1. Knowingly distribute, manufacture, bring into this state or possess a controlled substance specified in subsection A of this section in the quantities specified in subsection C of this section; or

---

[5]The Tenth Circuit Court of Appeals has "not yet settled whether a challenge to the sufficiency of the evidence on a habeas petition is a question of fact or a question of law, and therefore whether 28 U.S.C. § 2254(d)(1) or § 2254(d)(2) should apply." *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006). In this case, as in *Hamilton*, Petitioner is not entitled to relief regardless of whether subsection (d)(1) or subsection (d)(2) is applied.

2. Possess any controlled substance with the intent to manufacture a controlled substance specified in subsection A of this section in quantities specified in subsection C of this section; or

3. Use or solicit the use of services of a person less than eighteen (18) years of age to distribute or manufacture a controlled dangerous substance specified in subsection A of this section in quantities specified in subsection C of this section.

The statute further provides that a "[v]iolation of this section shall be known as "trafficking in illegal drugs." *Id.*

 Under Oklahoma law, the elements of a conspiracy are (1) an agreement between two or more persons to commit the crime charged and (2) an act by one or more of the parties in furtherance of the conspiracy, or to effect its purpose.  Okla. Stat. tit. 21, §§ 421 and 423; *Pink v. State*, 104 P.3d 584, 594 (Okla. Crim. App. 2004).  *See also* Response, Ex. E (Instruction No. 6). Because of the inherently secretive nature of a conspiracy, Oklahoma courts recognize that the existence of a conspiracy may be proved by indirect proof and circumstantial evidence.  *Pink*, 104 P.3d at 595.

The State presented the testimony of  Officer Carey Rouse, an investigator with the District Six Drug Task Force, and Bobby Burton.  Rouse testified to arranging a drug buy of approximately one pound of methamphetamine between a confidential informant, Bobby Burton, and Petitioner.  Tr. at 86-76.   Rouse testified that on December 22, 1999, Burton called Petitioner to set up the drug buy, Tr. at 87, and then Burton, who was wired with a body microphone and had been given ten thousand dollars designated cash,[6] drove to Petitioner's house in Duncan, Oklahoma.  Tr. at 92-93.  Rouse testified that over the

---

[6]Rouse testified that prior to the drug purchase all of the serial numbers of the bills used as the buy money were recorded for comparison when the money was later recovered.  Tr. at 92-95.

13

wired transmitter he heard Petitioner, whose voice he recognized, instruct "Peco,"[7] an individual in the front yard looking around with binoculars, to go with Mr. Burton.  Tr. at 92, 127-28.    Rouse testified that Burton drove around Duncan, stopping at two convenience stores where Peco appeared to place phone calls, and finally stopped at a residence at 1212 South 7th Street.   Tr. at 95, 98-99.   Rouse testified that over the transmitter he heard a person in the house, Mr. Royce King, tell Burton and Peco that Petitioner was in a trailer behind the house and that he heard a discussion in the trailer concerning the money involved in the drug transaction. Tr. at 100, 102.[8]  Rouse testified that as Burton exited the trailer, he informed Rouse via the wired transmitter that a "kid had the dope." Tr. at 102.   Rouse further testified that as previously arranged, Burton met authorities at the county fairgrounds and turned over the package containing the methamphetamine, which was later determined by a criminalist at the Oklahoma State Bureau of Investigation to be three hundred ninety-eight grams of methamphetamine.  Tr. at 104, 111, 143.[9]   Rouse testified that authorities stopped a vehicle that left the house where the drug transaction had taken place and detained Peco Romero and Mr. King, who was later released.  Tr. at 113, 125.  Finally, Rouse testified that he returned to Petitioner's home trying to find him[10] and was informed that a police officer had found a thirteen-year-

---

[7]Rouse later testified that Peco's last name was Romero and that he remained outside the trailer during the drug transaction.  Tr. at 103-04.

[8]Rouse testified that the tape recording of the drug transaction was inadvertently erased but that he was familiar with Petitioner's voice and there was no doubt in his mind that Petitioner was the individual conducting the transaction with Burton in the trailer.  Tr. at 124, 127.

[9]Rouse later explained that there are four hundred fifty-three grams in a pound.  Tr. at 131.

[10]Rouse testified that Petitioner did not return to his home and was not apprehended for the December 19, 1999, drug transaction until authorities brought him back to Oklahoma on September 26, 2003, from Burke, Texas.  Tr. at 117.

old boy who had the ten thousand dollars previously designated as the buy money.  Tr. at 115-16.[11]

Bobby Burton testified that after he set up the drug buy with Petitioner, he met with Officer Rouse who searched him and wired him with a transmitter and searched his vehicle.  Tr. at 66.  He stated that after he was given the ten thousand dollars buy money, he drove to Petitioner's house, where he was met by Peco and Petitioner, who instructed Peco to drive around with Burton to make sure there were no police in the area.  Tr. at 68.  Burton testified that after the two stops, he was directed to stop at the house on 7th Street.  Tr. at 69- 71.  Burton stated that he and Petitioner and a young boy about age 12 or 13 entered the trailer, and after Burton handed the money to Petitioner, the boy reached inside his pants and pulled out a popcorn bag which contained a duct-tape wrapped package containing the methamphetamine and Petitioner handed the package to Burton.  Tr. at 73-75.

The trial record demonstrates that there was more than sufficient evidence presented at the trial from which a reasonable jury could have found Petitioner guilty of the conspiracy to traffic methamphetamine beyond a reasonable doubt.  Consequently, the OCCA's decision is not contrary to, or an unreasonable application of, the clearly-established *Jackson* standard.   Nor was the OCCA's decision an unreasonable determination of the facts in light of the evidence presented at trial.   Accordingly, Petitioner is not entitled to habeas relief on Ground Three.

---

[11]Officer Patrick Norton testified that after he heard the completion of the drug transaction on his police radio, he proceeded to execute a previously obtained search warrant on Petitioner's residence, when he saw near the residence two males as described on the police radio who were acting suspiciously. Tr. at 134.  Norton detained two juvenile males, and in the coat pocket of one of the juveniles he found a large roll of money which he then turned over to Rouse. Tr. at 135-37.

## <u>RECOMMENDATION</u>

For these reasons, it is the recommendation of the undersigned Magistrate Judge that Grounds Two and Four of the petition be dismissed as moot and the remaining Grounds of the petition be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 12th of December, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 22nd day of November, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE